D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
AARON CONSULTING CO., LLC d/b/a
Ibidmobile.net,

                Plaintiff,                            **MEMORANDUM & ORDER**

      -against-                                16-CV-6775 (NGG) (VMS)

SNAP SOLUTIONS LLC d/b/a Events.org, iBid,
and ibid.com; and DAVID HASSAN,

                Defendants.
-------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

      Plaintiff Aaron Consulting Co., LLC brings this action under Section 43 of the Lanham Act, 15 U.S.C. § 1125, alleging that Defendants Snap Solutions LLC ("Snap") and David Hassan diluted and misappropriated Plaintiff's common-law rights in the "ibidmobile.net" trademark. (See Am. Compl. (Dkt. 13).) Defendants have moved to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) and (5) on the grounds that the court does not have personal jurisdiction over Defendants and that Plaintiff did not properly serve the amended complaint on Defendants. (See Defs. Mot. to Dismiss ("Mot.") (Dkt. 21-1); Defs. Mem. in Supp. of Mot. ("Mem.") (Dkt. 21).)

      For the following reasons, Defendants' motion to dismiss is GRANTED.

**I.    BACKGROUND**

    **A.    Facts**

      The court takes the following statement of facts largely from Plaintiff's amended complaint, the well-pleaded allegations of which the court generally accepts as true for purposes of Defendants' motion to dismiss. N.Y. Pet Welfare Ass'n v. City of New York, 850 F.3d 79, 86 (2d Cir. 2017). "Additionally, because a motion to dismiss for lack of personal jurisdiction

1

requires the resolution of factual issues outside the pleadings, the [c]ourt considers other relevant submissions from the parties at this stage." Cloplay Plastic Prods. Co. v. Excelsior Packaging Grp., Inc., No. 12-CV-5262 (JPO), 2014 WL 4473352, at *1 (S.D.N.Y. Sept. 11, 2014); see Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 86 (2d Cir. 2013) (per curiam) ("[A] district court may [consider materials outside the pleadings] without converting a motion to dismiss for lack of personal jurisdiction into a motion for summary judgment."). Specifically, the court considers the Declaration of David Hassan in support of Defendants' motion to dismiss (see Decl. of David Hassan ("Hassan Decl.") (Dkt. 21-2)), as well as the exhibits attached to Plaintiff's amended complaint.

1. The Parties

Plaintiff is a New York corporation with its principal place of business in Brooklyn, New York. (Am. Compl. ¶ 1.) Plaintiff owns and operates the website ibidmobile.net, "a long-standing, world renowned professional wireless auction company." (Id. ¶ 10.) Plaintiff registered the website's domain name on May 5, 2010. (Id. ¶ 11.) According to Plaintiff, "Ibidmobile.net has become a fixture of professional online and mobile auction management, providing charity auction technology and services for the business of raising funds for nonprofit[s]." (Id.) Plaintiff's ibidmobile.net mark has been in continuous commercial use since April 10, 2010, and was registered with the United States Patent and Trademark Office on July 3, 2012. (Id. ¶ 22.)

Snap is a Delaware corporation with its principal place of business in Chicago, Illinois. (Id. ¶¶ 2, 6.) Snap operates and maintains the website Events.org, which provides various services for nonprofit organizations. (Hassan Decl. ¶ 6; see Am. Compl. ¶ 2.) In addition, through the websites ibid.co and ibid.org, Snap "provid[es] online bidding software and services

2

on mobile devices to allow event participants to bid in live and silent auctions." (Hassan Decl. ¶ 8; see Am. Compl. ¶ 2.) Hassan is Snap's owner, as well as the owner of ibid.co, and resides in Chicago, Illinois. (Am. Compl. ¶ 3.) According to Hassan, "Snap has not done any business in New York relating to its mobile online bidding service," which is "targeted towards Chicago and the Midwestern United States." (Hassan Decl. ¶¶ 11, 12.)

Snap registered the domain name ibid.co on July 20, 2010, over two months after Plaintiff registered ibidmobile.net. (Am. Compl. ¶ 14.) Plaintiff alleges that ibid.co uses the term "iBid Mobile Bidding," which causes ibid.co "to be displayed near Plaintiff's website 'ibidmobile.net[.]'" (Id. ¶ 13.) Plaintiff notes that, as of January 2011, Events.org "did not reference iBid in connection with [Defendants'] online auction services." (Id. ¶ 15.) Plaintiff alleges that Defendants have "consistently traded on the protected name and good will of Plaintiff in the United States and around the world, creating consumer confusion and diluting Plaintiff's reputation and the value of Plaintiff's name. (Id. ¶¶ 12, 16.)

2. The Trademark Dispute

On November 4, 2016, Plaintiff's counsel sent a cease-and-desist letter to Defendants regarding their allegedly infringing behavior. (Id. ¶ 17; Pl. Nov. 4, 2016, Letter to Defs. (Dkt. 13-1).) On November 7, 2016, Hassan replied that Defendants had been "working under the iBid name since 2008[, t]wo years prior to [Plaintiff's] claimed Trademark," and demanded that Plaintiff "stop using the iBid name asap." (Am. Compl. ¶ 18.) Plaintiff's counsel requested proof of Defendants' "claimed Trademark from 2008." (Id. ¶ 19.) Hassan stated that Defendants had not applied for a trademark, "since there were other organizations that were using the iBid name[,] including the State of Illinois," and again asked Plaintiff "to refrain from using the name." (Id. ¶ 20.) Plaintiff alleges that, despite Plaintiff's request that Defendants "refrain from

3

using the iBid [n]ame, [Defendants] have continued the damaging and infringing behavior." (Id. ¶ 21.)

B. Procedural History

On December 7, 2016, Plaintiff filed a complaint in federal court making the above allegations against then-defendant Events.org. (See Compl. (Dkt. 1).) On January 23, 2017, Events.org executed a waiver of service. (Events.org Waiver of Service (Dkt. 7).) On March 21, 2017, Events.org requested a pre-motion conference in anticipation of its motion to dismiss the complaint for lack of personal jurisdiction. (Mar. 21, 2017, Letter (Dkt. 8).) Subsequently, Plaintiff informed Events.org that it intended to file an amended complaint naming Snap and Hassan as defendants. (June 5, 2017, Defs. Letter (Dkt. 12).)

Following the submission of the amended complaint on June 6, 2017, the court granted Defendants leave to move to dismiss the complaint without an additional pre-motion conference. (Nov. 22, 2017, Order (Dkt. 17).) The motion was fully briefed on January 5, 2018. (See Mot.; Mem.; Pl. Aff. in Opp'n to Mot. ("Pl. Opp'n") (Dkt. 21-3); Defs. Reply Mem. in Supp. of Mot. ("Defs. Reply") (Dkt. 21-4).)

II. LEGAL STANDARD

"Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction." Dorchester, 722 F.3d at 84. "At that preliminary stage, the plaintiff's prima facie showing may be established solely by allegations," id. at 85, and "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant," In re Terrorist Attacks on Sept. 11, 2001, 714 F.3d 659, 673 (2d Cir. 2013) (quotation marks and citation omitted). In evaluating the sufficiency of the jurisdictional allegations, a court must "construe the

4

pleadings and affidavits in the light most favorable to the plaintiffs, resolving all doubts in their favor." Dorchester, 722 F.3d at 85 (internal quotation marks and citation omitted). That said, the court "will not draw argumentative inferences in the plaintiff's favor" nor "accept as true a legal conclusion couched as a factual allegation." In re Terrorist Attacks on Sept. 11, 2001, 714 F.3d at 673 (quotation marks and citations omitted).

## III. DISCUSSION

Defendants move to dismiss the complaint on two grounds: that the court does not have personal jurisdiction over either defendant; and that Plaintiff did not serve the amended complaint on Defendants within 90 days of filing the amended complaint, as required by Federal Rule of Civil Procedure 4(m). (Mem. at 1.) See Fed. R. Civ. P. 12(b)(2), (5). "The [c]ourt considers the jurisdictional issues first, because a dismissal for lack of jurisdiction renders all other claims moot." Darden v. DaimlerChrysler N. Am. Holding Corp., 191 F. Supp. 2d 382, 386 (S.D.N.Y. 2002) (citing, inter alia, Ruhrgas A.G. v. Marathon Oil Co., 526 U.S. 574, 583 (1999)); see Anders v. Verizon Commc'ns Inc., No. 16-CV-5654 (VSB), 2018 WL 2727883, at *6 (S.D.N.Y. June 5, 2018).

### A. Personal Jurisdiction

In deciding whether the court may exercise personal jurisdiction, the court "look[s] to the law of the forum state to determine whether personal jurisdiction will lie." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL (Licci III), 732 F.3d 161, 168 (2d Cir. 2013). Additionally, the "exercise of personal jurisdiction over a foreign defendant [must] comport[] with due process protections established under the United States Constitution." Id.; see Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945). "In a federal question case where a defendant resides outside the forum state, a federal court applies the forum state's personal jurisdiction rules 'if the federal

5

statute does not specifically provide for national service of process.'" PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997) (quoting Mareno v. Rowe, 910 F.2d 1043, 1046 (2d Cir. 1990)). Because the Lanham Act does not provide for national service of process, the court applies New York's jurisdictional statutes to determine whether it may exercise personal jurisdiction over Defendants. See A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines, 828 F. Supp. 2d 557, 563 (E.D.N.Y. 2011). "Pursuant to the New York long-arm statute, there are two ways that a New York court can exercise personal jurisdiction over a non-resident defendant: general jurisdiction pursuant to [N.Y. CPLR 301] ('Section 301') or specific jurisdiction pursuant to [N.Y. CPLR 302] ('Section 302')." Id. Because Plaintiff does not state on which basis it believes the court may assert personal jurisdiction over Defendants, the court examines the grounds for both general and specific jurisdiction. The court concludes that Plaintiff has not made out a prima facie showing that it would be proper for this court to exercise personal jurisdiction over either defendant.

1. General Jurisdiction

Under Section 301, "general jurisdiction is established if the defendant is shown to have 'engaged in continuous, permanent, and substantial activity in New York.'" United Mobile Techs., LLC v. Pegaso PCS, S.A. de C.V., 509 F. App'x 48, 50 (2d Cir. 2013) (summary order) (quoting Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 95 (2d Cir. 2000)). The defendant must have engaged in business in New York "not occasionally or casually, but with a fair measure of permanence and continuity." Wiwa, 226 F.3d at 95 (quotation marks and citation omitted). Courts have noted "tension" between the due-process requirement that a defendant have "affiliations with the State [that] are so 'continuous and systematic' as to render [it] essentially at home in the forum State," Daimler AG v. Bauman, 571 U.S. 117, 127 (2014)

(quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)), and Section 301's "agency-based theory of jurisdiction." Sonera Holding B.V. v. Cukurova Holding A.S., 750 F.3d 221, 224-25 & n.2 (2d Cir. 2014). Nevertheless, because general jurisdiction over Defendants is clearly lacking, the court need not address any disparities between the New York and due-process jurisdictional standards.

Defendants' activities in New York fall short of the level necessary to support general jurisdiction. Snap maintains that it "is not incorporated in New York, is not licensed to do business in New York, has no registered agent for service of process in New York, has no offices or employees in New York, owns no property in New York, and currently does no business and derives no revenue from New York." (Defs. Reply at 1 (citing Mem. at 6).) While Defendants admit that Snap "conducted a very small amount of business in New York unrelated to mobile online bidding, specifically registration for events and management of donors," they note that this activity only occurred from 2010 to 2015 and that the revenues from this activity were less than $1000, or less than one percent of Snap's total revenues during this period. (Hassan Decl. ¶ 14.) While the solicitation of "substantial and continuous" business, even without physical presence, may support the exercise of general jurisdiction, Snap's relatively insignificant amount of business does not suffice to subject it to jurisdiction in New York for all purposes. See Overseas Media, Inc. v. Skvortsov, 407 F. Supp. 2d 563, 569 (S.D.N.Y. 2006); cf. Zibiz Corp. v. FCN Tech. Sol'ns, 777 F. Supp. 2d 408, 418 (E.D.N.Y. 2011); Unique Indus., Inc. v. Sui & Sons Int'l Trading Corp., No. 05-CV-2744 (KMK), 2007 WL 3378256, at *3 n.4 (S.D.N.Y. Nov. 9, 2007) ("When less than 5% of a company's revenue attributes to its business in the forum state, general jurisdiction is normally denied."). Given that Snap is not incorporated in New York and does not even have a physical presence in the state, as well as the fact that Snap does not have

additional pervasive contacts with New York, it would not comport with either New York law or traditional notions of due process to subject Snap to general jurisdiction here. See Brown v. Lockheed Martin Corp., 814 F.3d 619, 629 (2d Cir. 2016) ("[W]hen a corporation is neither incorporated nor maintains its principal place of business in a state, mere contacts, no matter how 'systematic and continuous,' are extraordinarily unlikely to add up to an 'exceptional case.'"); cf. Overseas Media, 407 F. Supp. 2d at 568.

Finally, because Hassan is domiciled in Illinois and has not consented to jurisdiction in New York, it would not comport with due process to subject him to general jurisdiction in New York. See Reich v. Lopez, 38 F. Supp. 3d 436, 455 (S.D.N.Y. 2014).

### 2. Specific Jurisdiction

Section 302, New York's long-arm statute, provides for the exercise of personal jurisdiction over any foreign defendant who:

> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
>
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>
> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
>
> 4. owns, uses or possesses any real property situated within the state.

CPLR 302(a).

8

The court again notes that Plaintiff does not refer to particular sections of the long-arm statute in claiming that Defendants are subject to personal jurisdiction in New York, but the court has nevertheless attempted to match up Plaintiff's various allegations and claims with the relevant sections of the law.

      *a.*     *Section 302(a)(1)*

Section 302(a)(1) confers jurisdiction in New York on a foreign defendant that "transacts any business within the state." "A defendant transacts business if he has 'purposely availed himself of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws.'" Reich, 38 F. Supp. 3d at 457 (quoting D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 104 (2d Cir. 2006)); see A.W.L.I., 828 F. Supp. 2d at 564 (citing Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246-47 (2d Cir. 2007)) (stating that New York courts "rely on the constitutional standard set forth by the Supreme Court" when considering whether a defendant "transacted business"). "A single transaction may suffice for personal jurisdiction under [Section] 302(a)(1), and physical presence by the defendant in the forum state during the activity is not necessary." A.W.L.I., 828 F. Supp. 2d at 565 (citing, inter alia, Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 787 (2d Cir. 1999)). A suit will be deemed to have arisen out of a defendant's activities within the state if there is "an 'articulable nexus' or 'substantial relationship' between the plaintiff's claim and the defendant's transaction in New York." Strauss v. Crédit Lyonnais, S.A., 175 F. Supp. 3d 3, 18-19 (E.D.N.Y. 2016) (quoting Best Van Lines, 490 F.3d at 246). "This inquiry is a fact-specific one, and the point at which the connection between the parties' activities in New York and the plaintiffs' claim crosses the line from 'substantially related' to 'mere coincidence' is not always self-evident."

9

Licci ex rel. Licci v. Lebanese Canadian Bank, SAL (Licci I), 673 F.3d 60, 67 (2d Cir. 2012) (alterations adopted) (quotation marks and citation omitted).

Plaintiff first points out that Snap has, in the past, conducted a "very small amount of business in New York." (Pl. Opp'n ¶ 13.) This piece of information could be relevant to the question of specific jurisdiction; here, however, there is no allegation that Snap's past connections to New York were substantially related to the subject matter of this lawsuit. (See Hassan Decl. ¶¶ 11, 14.) As Hassan affirms, these business transactions related to "registration for events and management of donors," not mobile online bidding or the ibid.co website. (Id. ¶ 14.) While the "substantial relationship" requirement is "relatively permissive," Strauss, 175 F. Supp. 3d at 19 (quoting Licci v. Lebanese Canadian Bank, SAL (Licci II), 984 N.E.2d 893, 900 (N.Y. 2012)), the court has no reason to suspect that Snap's transaction of business in New York from 2010 to 2015 was in any way moored to its operation of ibid.co, thus making personal jurisdiction on this basis improper. See Licci III, 732 F.3d at 168-69.

Plaintiff next alleges that Snap uses ibid.co to "solicit[] customers in New York" and "directly advertise[] New York[-]based events to New York customers." (Pl. Opp'n ¶ 15.) When personal jurisdiction under Section 302(a)(1) is asserted on the basis of the defendant's operation of a website, courts apply a "sliding scale" test based on the website's "interactivity." See, e.g. Franklin v. X Gear 101, LLC, No. 17-CV-6452 (GBD), 2018 WL 4103492, at *3 (S.D.N.Y. Aug. 28, 2018); Audiovox Corp. v. South China Enter., Inc., No. 11-CV-5142 (JS), 2012 WL 3061518, at *3 (E.D.N.Y. July 26, 2012); see Best Van Lines, 490 F.3d at 251 ("[T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet . . . ." (quoting Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997))).

"A website that merely passively provides information that is accessed by individuals in New York is not grounds for the exercise of personal jurisdiction." Audiovox, 2012 WL 30615168, at *3. "However, if a website is interactive and allows a buyer in New York to submit an order online, courts typically find that the website operator is 'transacting business' in New York and is therefore subject to the court's jurisdiction." Id.

The facts asserted by Plaintiff, even if true, would not support the conclusion that Snap is transacting business in New York through ibid.co. Plaintiff does not aver that Snap "offers merchandise for sale to consumers in New York and shipment of such merchandise to there" through ibid.co, nor does it claim that Snap derived any revenue from New York customers through its operation of ibid.co. See Rovio Entm't, Ltd. v. Allstar Vending, Inc., 97 F. Supp. 3d 536, 542 (S.D.N.Y. 2015) (citing Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 170-71 (2d Cir. 2010)); see also CES Indus., Inc. v. Minn. Transition Charter Sch., 287 F. Supp. 2d 162, 166 (E.D.N.Y. 2003) ("It is well-established that solicitation of business alone will not justify a finding of corporate presence in New York."); cf. Novak v. Overture Servs., Inc., 309 F. Supp. 2d 446, 455 (E.D.N.Y. 2004). Plaintiff points to the fact that Events.org "continues to advertise New York events and auction software" and that Events.org contains a "New York Calendar," "which includes a current listing of New York events, including charity events that hold silent auctions" (Pl. Opp'n ¶¶ 18-19), but these allegations also fail to establish personal jurisdiction under Section 302(a)(1). First, as Defendants point out, "neither the Events.org website nor the event listing thereon gives rise to the claims in Plaintiff's" amended complaint. (Defs. Reply at 2-3.) Second, Snap does not organize the events it advertises on Events.org, nor does it derive any revenue from these advertisements; rather, Events.org "allows nonprofits to advertise events free of charge across the United States." (Id. at 3.) This activity is typical of a

"passive" website and cannot support the exercise of jurisdiction under Section 302(a)(1). See Royalty Network Inc. v. Dishant.com, LLC, 638 F. Supp. 2d 410, 418 (S.D.N.Y. 2009) (analogizing "passive" websites "to an advertisement in a nationally-available magazine or newspaper, [which] does not without more justify the exercise of jurisdiction over the defendant" (quoting Citigroup Inc. v. City Holding Co., 97 F. Supp. 549, 565 (S.D.N.Y. 2000))). As Defendants correctly point out, "online advertising, even if directed at New York residents, is not sufficient to support the exercise of personal jurisdiction over a defendant when it is not supplemented by business transactions occurring in the state or accompanied by a fair measure of the defendant's permanence and continuity in New York which establishes a New York presence." (See Mem. at 7.) See A.W.L.I., 828 F. Supp. 2d at 566 (alterations adopted) (citation and internal quotation marks omitted).

Finally, because Snap did not transact business in New York for purposes of this lawsuit, Section 302(a)(1) similarly does not support the exercise of personal jurisdiction over Hassan. See Duravest, Inc. v. Viscardi, A.G., 581 F. Supp. 2d 628, 635 (S.D.N.Y. 2008) (stating that an individual defendant may be subject to personal jurisdiction on the basis of his relevant contacts with the corporate defendant).

    b.  *Section 302(a)(2)*

As set forth above, Section 302(a)(2) permits the court to exercise jurisdiction over a defendant if the defendant has "commit[ted] a tortious act <u>within</u>" New York. CPLR 302(a)(2) (emphasis added). "Section 302(a)(2) has been narrowly construed to apply only when the defendant was actually physically present in New York when he performed the allegedly tortious act." Rescuecom Corp. v. Hyams, 477 F. Supp. 2d 522, 531 (N.D.N.Y. 2006) (citing Bensusan Rest. Corp. v. King, 126 F.3d 25, 28-29 (2d Cir. 1997)). Where a foreign defendant allegedly

infringes an in-state plaintiff's trademark through the defendant's operation of a website, physical presence is deemed to be "where the website is created and/or maintained." A.W.L.I., 828 F. Supp. 2d at 571.

Here, ibid.co, ibid.org, and Events.org were all created and maintained in Illinois, not New York. (Mem. at 9 (citing Hassan Decl. ¶¶ 7, 9).) Plaintiff does not claim otherwise. (See Pl. Opp'n.) Similarly, there are no allegations that Hassan committed any relevant tortious actions that do not relate to his ownership of these websites. Accordingly, Section 302(a)(2) jurisdiction over both defendants would be improper.

  c. *Section 302(a)(3)*

Section 302(a)(3) permits the court to exercise jurisdiction over a foreign defendant who "commits a tortious act <u>without</u> the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." CPLR 302(a)(3) (emphasis added). In other words, in order to establish jurisdiction over Defendants pursuant to this section, Plaintiff "must establish harm within New York State caused by [Defendants'] tortious conduct and then satisfy the requirements set forth either in subsection (i) or subsection (ii)." A.W.L.I., 828 F. Supp. 2d at 571. It bears noting that "Section 302(a)(3) 'was not designed to go to the full limits of permissible jurisdiction.'" Richtone Design Grp. L.L.C. v. Classical Pilates, Inc., No. 06-CV-547 (NRB), 2006 WL 2588135, at *2 (S.D.N.Y. Aug. 21, 2006) (quoting Ingraham v. Carroll, 687 N.E.2d 1293, 1295 (N.Y. 1997)). "Rather, the limitations in

subparagraphs (i) and (ii) 'were deliberately inserted to keep the provision well within constitutional bounds.'" Id. (quoting Ingraham, 687 N.E.2d at 1295).

### i. Injury Within New York

"Trademark infringement can be a 'tort' for the purpose of determining long-arm jurisdiction." Energy Brands Inc. v. Spiritual Brands, Inc., 571 F. Supp. 2d 458, 470-71 (S.D.N.Y. 2008) (alteration adopted) (quotation marks and citation omitted). "Therefore, courts have found that trademark infringement litigation may proceed even in the absence of [any] product having been sold." PDK Labs, Inc. v. Proactive Labs, Inc., 325 F. Supp. 2d 176, 180 (E.D.N.Y. 2004). "[F]or purposes of determining jurisdiction under [Section] 302(a)(3), the alleged injury stemming from infringement of a trademark in the form of damage to goodwill, lost sales, or lost customers will occur where the trademark owner resides and conducts business because this is where the first effects of trademark infringement or dilution are typically felt." A.W.L.I., 828 F. Supp. 2d at 572 (internal quotation marks and citation omitted).

Plaintiff has met the preliminary harm requirement of Section 302(a)(3): Plaintiff alleges various Lanham Act harms, all of which are said to occur in New York because that is where Plaintiff, a New York corporation, resides. Even so, Plaintiff cannot survive the motion to dismiss if the complaint does not also meet one of the two jurisdictional bases in subsections (i) or (ii).

### ii. Subsection (i): Regular Solicitation of Business in New York

As set forth above, Plaintiff has not alleged facts sufficient to show that Defendants "transacted business" in New York under Section 302(a)(1); or that they "engaged in continuous, permanent, and substantial activity in New York" from which they derived "substantial revenue," as would support Section 301 jurisdiction. Accordingly, specific jurisdiction cannot

attach under Section 302(a)(3)(i). See Levans v. Delta Airlines, Inc., 988 F. Supp. 2d 330, 339 (E.D.N.Y. 2013).

### iii. Subsection (ii): Expectation of Consequences

Section 302(a)(3)(ii), meanwhile, "allows for jurisdiction over an out-of-state defendant with no contacts with New York, if, inter alia, the defendant is alleged to have committed a tortious act outside the State that caused, and reasonably should have been expected by the putative defendant to cause, injury to a person or property within the State." Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 32 (2d Cir. 2010). "The test of whether a defendant expects or should reasonably expect its actions to have consequences in New York is an objective one." In re Dental Supplies Antitrust Litig., No. 16-CV-696 (BMC), 2017 WL 4217115, at *7 (E.D.N.Y. Sept. 20, 2017) (citing Kernan v. Kurz-Hastings, 175 F.3d 236, 241 (2d Cir. 1999)). "To ensure that [Section 302(a)(3)(ii)] is construed in a manner consistent with federal due process requirements, New York courts require 'tangible manifestations of a defendant's intent to target New York, or . . . concrete facts known to the nondomiciliary that should have alerted it to the possibility of being brought before a court in the Southern District of New York.'" DH Servs., LLC v. Positive Impact, Inc., No. 12-CV-6153 (RA), 2014 WL 496875, at *13 (S.D.N.Y. Feb. 5, 2014) (alteration in original) (quoting Royalty Network, 638 F. Supp. 2d at 424). In other words, the plaintiff must bring to bear "evidence of a purposeful New York affiliation, for example, a discernible effort to directly or indirectly serve the New York market." In re Dental Supplies, 2017 WL 4217115, at *7 (quoting Kernan, 175 F.3d at 241).

Plaintiff has not met its burden of alleging that Defendants discernibly attempted to serve the New York market. This case is akin to DH Services, in which the district court was unable to conclude that the defendant had made a "discernible effort" to serve the New York market

15

because the plaintiff had "not offered any evidence showing that [the d]efendant actively solicited individuals from New York to make online donations or attend its fundraiser events, all of which were hosted in Atlanta and required individuals to travel to Atlanta to participate." 2014 WL 496875, at *14. Similar to that case, the only connection between Snap's websites and New York is that the websites can be viewed by users in New York with an internet connection. (See Hassan Decl. ¶ 13.) Insofar as Snap uses the websites to target users and host events, those activities largely take place in and are targeted towards "Chicago and the Midwestern United States," "not New York." (Id. ¶ 12; Mem. at 11.) While Plaintiff does allege that Snap "purposefully solicits customers in New York" and "directly advertises New York based events to New York customers" (Pl. Opp'n ¶ 15), these allegations are lacking in any specificity and, for reasons stated above, do not relate to the subject matter of this litigation. (See supra Section III(A)(2)(a).) Such conclusory allegations cannot support personal jurisdiction under Section 302(a)(3)(ii). Cf. Mt. Whitney Invs., LLLP v. Goldman Morgenstern & Partners Consulting, LLC, No. 15-CV-4479 (ER), 2017 WL 1102669, at *5 (S.D.N.Y. Mar. 23, 2017) (rejecting broad allegations under Section 302(a)(3)(ii) as conclusory).

    *d.*   *Section 302(a)(4)*

Finally, Section 302(a)(4) permits the exercise of jurisdiction over a foreign defendant who "owns, uses or possesses any real property situated within" New York. Jurisdiction would clearly be improper under this section, as "[n]either [Snap] nor [Hassan] owns, leases or possesses any real property in New York, and Plaintiff does not allege otherwise." (Mem. at 12.)

### B.   Jurisdictional Discovery

"It is well settled under Second Circuit law that, even where plaintiff has not made a prima facie showing of personal jurisdiction, a court may still order discovery, in its discretion,

16

when it concludes that the plaintiff may be able to establish jurisdiction if given the opportunity to develop a full factual record." Leon v. Shmukler, 992 F. Supp. 2d 179, 194 (citing, inter alia, In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 208 (2d Cir. 2003)); see Hollins v. U.S. Tennis Ass'n, 469 F. Supp. 2d 67, 70-71 (E.D.N.Y. 2006) (collecting cases). "[J]urisdictional discovery is only appropriate when Plaintiff has asserted 'specific, non-conclusory facts that, if further developed, could demonstrate substantial state contacts.'" Russo v. Sys. Integrators Inc., No. 17-CV-4317 (DRH), 2018 WL 4100493, at *5 (E.D.N.Y. Aug. 28, 2018) (quoting Leon, 992 F. Supp. 2d at 195); see Ayyash v. Bank Al-Madina, No. 04-CV-9201 (GEL), 2006 WL 587342, at *5 (S.D.N.Y. Mar. 9, 2006) ("Such discovery has typically been authorized where the plaintiff has made a threshold showing that there is some basis for the assertion of jurisdiction, facts that would support a colorable claim of jurisdiction." (alteration adopted) (citation and internal quotation marks omitted)). The decision to permit jurisdictional discovery is within the discretion of the district court. See Leon, 992 F. Supp. 2d at 194.

The allegations in Plaintiff's complaint do not warrant jurisdictional discovery. Neither defendant is domiciled or located in New York. As discussed above, Plaintiff's claim that Defendants had contacts with New York for the purposes of this trademark suit through their operation of the ibid.co and Events.org websites fails as a matter of law, not because the factual record is insufficiently developed. What's more, Plaintiff's request for discovery does not specify what facts it believes could lend credence to its claim of jurisdiction, instead incorrectly asserting that the motion to dismiss is "premature" because "[n]o discovery in the instant matter has been taken." (Pl. Opp'n ¶ 33.) Because "Plaintiff has not provided the Court with any reason to infer that an opportunity to develop the record would be anything other than frivolous," Russo, 2018 WL 4100493, at *5, the court denies Plaintiff's request for jurisdictional discovery.

C. **Service of Process**

Because the court concludes that it does not have a basis for asserting personal jurisdiction over either defendant, it need not address the question of whether Plaintiff properly effected service of process of the amended complaint.

IV. **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss the amended complaint (Dkt. 21-1) is GRANTED. Plaintiff's amended complaint is DISMISSED WITHOUT PREJUDICE.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
September 20, 2018

NICHOLAS G. GARAUFIS
United States District Judge